IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


LEONARD J. BARFIELD,            )
                                )
                 Plaintiff,     )
                                )
vs.                             )        Case No. 06-4128-SAC
                                )
MICHAEL J. ASTRUE,[1]           )
Commissioner of                 )
Social Security,                )
                                )
                 Defendant.     )
_____ )


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner

---

     [1]On February 12, 2007, Michael J. Astrue was sworn in as the
Commissioner of Social Security.  In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure, Michael J.
Astrue is substituted for Commissioner Jo Anne B. Barnhart as the
defendant.  In accordance with the last sentence of 42 U.S.C. §
405(g), no further action is necessary.

1

as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

2

determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does

not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II.  History of case

On April 13, 2006, administrative law judge (ALJ) William G.

Horne issued his decision (R. at 27-34).  Plaintiff alleged an
onset date of disability of September 20, 2004 (R. at 27).  At
step one, the ALJ determined that plaintiff had not worked at
substantial gainful activity since the alleged onset date (R. at
29).  At step two, the ALJ found that plaintiff has severe
impairments of lumbosacral back pain and hypertension (R. at 29).
At step three, the ALJ determined that plaintiff's impairments
did not meet or equal a listed impairment (R. at 30).  After
establishing plaintiff's RFC, the ALJ found at step four that
plaintiff could not perform past relevant work (R. at 33).  At
step five, the ALJ concluded, based on vocational expert (VE)
testimony, that plaintiff could perform a significant number of
other jobs that exist in the national economy.  Therefore, the
ALJ concluded that plaintiff was not disabled (R. at 33-34).

**I.  Did the ALJ err in his evaluation of the opinions expressed
by Dr. McKinney?**

Dr. McKinney examined plaintiff on February 1, 2005 and
reviewed his chart at the Marian Clinic.  Based on that
examination and review of the records, Dr. McKinney made the
following findings in regards to her physical examination and her
impressions:

> Physical Exam: Mr. Barfield can walk
> forwards, backwards and sideways with a
> slight limp on the left. He has difficulty
> walking on his toes or heels as it causes
> pain in his back and left leg. He got on and
> off the exam table without assistance. Range

5

of motion, strength and sensation are grossly intact in the upper extremities although there is some pain in extremes of motion of base of right thumb. Patellar and Achilles reflexes are within normal limits. Sensation is intact in lower extremities except for numbness of a 1-3 inch oval area over the lower anterior shin on the left. Strength is intact on the right lower extremity but in 5-/5 range on left, possibly due to pain. Low back range of motion is mildly limited all ranges of motion. He has palpably tense muscles in lumbar paraspinals and muscles around the sciatic notch of the left buttock. He also has a lot of palpable muscle tension between the shoulder blades. He has mild decrease in left hip internal rotation and has pain with both active and passive rotation of left hip. Straight leg raising is mildly limited on the left with pain in the anterior shin and macro-iliac area on the left. He has pain with palpation of the left sciatic notch area, left macro-iliac joint and lower anterior shin.

Impression: Low back strain left particularly with significant underlying degenerative disc disease at L4-5 and L5-S1.
      Hypertension
      Osteoarthritis

Mr. Barfield was injured in 2002 and despite treatment is not cured. He is not able to do any jobs involving standing, walking, climbing stairs or ladders, stooping, kneeling, crawling, lifting or carrying. He will not tolerate sitting more than 15-20 minutes at a time. He is not able to tolerate the type of jobs he has done in the past and should not do them as that type of activity will make his condition worse.

(R. at 261).

The ALJ analyzed the opinions expressed by Dr. McKinney as follows:

6

The...objective medical evidence of record
does not support the claimant's allegations
of disabling limitations.  An MRI revealed
only mild degenerative disease.  While there
may be an argument for worsened clinical
findings when comparing the consultative
examiner's examination to that of Dr.
McKinney's, the claimant's treating
physician, the undersigned concludes that Dr.
McKinney was more reflective of the
claimant's subjective complaints of pain.
During the latter examination, the claimant
reportedly limped. Dr. McKinney noted
tenseness, but did not report spasms. The
claimant had mild difficulty with orthopedic
maneuvers in both examinations.
Notwithstanding the findings of his treating
physician, the undersigned finds there is no
objective or clinical medical findings to
support a finding of total disability...

Furthermore, Dr. McKinney opined he was
unable to do any jobs involving standing,
walking climbing stairs or ladders, stooping,
kneeling, crawling, lifting or carrying.
Moreover, she opined he would not tolerate
sitting more than 15 to 20 minutes at a time
or the types of jobs he had performed in the
past as such activity would worsen his
condition (Exhibits SF/4 and 6F)...

First, Dr. McKinney's opinion relates to the
claimant's past work activity and does not
indicate there was no work activity he could
perform. Secondly, as indicated above, Dr.
McKinney's opinion appears to consider the
claimant's significant pain as her treating
records contain no record of objective
studies, no complaints from the claimant of
back pain, as well as no treatment for back
pain. Thus, her opinion, although it is that
of a treating physician, is not consistent
with other medical evidence of record that
indicates the claimant experiences mild
degenerative disc disease. As such, her
opinion is not accorded controlling weight.

(R. at 31-32).

7

Following the decision by the ALJ, plaintiff submitted additional evidence from Dr. McKinney to the Appeals Council which the Appeals Council made part of the record (R. at 12). The Appeals Council found that this additional evidence did not provide a basis for changing the ALJ's decision and accorded it little weight.  The Appeals Council indicated that the record as a whole did not support Dr. McKinney's opinions, the ALJ considered a "similar" statement from Dr. McKinney before issuing his decision, and the ALJ addressed the prior evidence from Dr. McKinney in his decision and provided rationale for not according it controlling weight (R. at 9).  Since the additional evidence from Dr. McKinney was made a part of the administrative record by the Appeals Council, it will be considered by the district court in its review of the Commissioner's decision.  O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994).

The additional evidence from Dr. McKinney included a medical source statement-physical, which generally provided additional and greater limitations than those in the RFC findings made by the ALJ (R. at 283-284).  Dr. McKinney also wrote a letter, dated April 4, 2006, in which she stated the following:

> As I think you know I am a retired, Board
> Certified Physiatrist volunteering at the
> Marian Clinic (a clinic for low income people
> who do not have health insurance). I saw Mr
> Leonard Barfield in February of 2005 and
> evaluated his physical abilities... Mr
> Barfield tells me he applied for social
> security disability was denied and has

8

recently been before an administrative law
judge regarding this issue. He tells me the
judge requested he get a new evaluation and
get a Medical Source Statement-Physical
filled out. I have examined Mr Barfield,
reviewed pertinent records, and filled out
the Medical Source Statement form.

There has not been a lot of change in Mr
Barfield's condition but he is gradually
getting worse. He has more pain with activity
and finds the pain harder to manage. He tries
to keep active but has to sit or lie down to
rest several times a day. He is independent
in self care but slower than he used to be
especially with getting his shorts, trousers,
socks and shoes on as the bending and
reaching causes pain.

Mr Barfield walks with a slight limp on the
left which worsens as his gait is stressed as
in toe or heel walking, walking backwards,
walking fast or up and down steps. He has
difficulty walking on his toes or heels or
tandem and has increased pain with these gait
patterns. Reflexes are still intact but he
has decreased sensation and numbness in a
small area of the left, anterior shin. He has
4+5-/5 muscle strength in left lower
extremity, 5/5 being normal. He has
considerable palpable muscle tension in the
left posterior hip, lumbar paraspinals,
cervical paraspinals and scapular muscles.
Upper extremity strength and range of motion
are adequate except for the right thumb. He
has an obvious bony nodule over the posterior
lateral PIP joint of the right thumb. He is
right handed. Range of motion; abduction of
the thumb is 65 degrees (should have 90
degrees), extension PIP joint left thumb is
full, on right lacks 10 degrees of full,
flexion of PIP joint right thumb is 30
degrees and on the left 65 degrees. Hand
strength is within normal limits.

I reviewed an x-ray of the lumbar spine done
April 4 '06, it demonstrates mild narrowing
of the intervertebral disc space heights,

mild marginal osteophytosis and mild
hypertrophic osteoarthritic changes of the
facet joints. These findings are all caused
by degenerative osteoarthritis. The decreased
disc space heights, the osteophytosis(bony
masses growing on bone surfaces) and
hypertrophic osteoarthritis (osteophytes) are
all making the intervertebral foramen
smaller. **This decrease in foramen size is
through out the lumbar spine. This is
important because the spinal nerves exit
these foreman and as the foreman get smaller
more and more pressure is brought to bare on
these nerves causing pain, sensory changes
and decreased strength. Even though the x-ray
findings are mild the combination of mild
changes has already put enough pressure on
some of the lumbar nerve roots to cause some
decrease in sensation and more importantly
some decrease in strength. As we move our
backs in ordinary activity like bending to
the side or turning, or have spinal muscle
spasm and splinting, the foramen are
temporarily even smaller putting more than
usual pressure on the spinal nerves,
increasing pain particularly. This is the
reason for Mr Barfield's pain and difficulty
functioning.** Osteoarthritis is not curable.
Treatment is managing the pain and reducing
the aggravating activities.

The changes in the right thumb are also
arthritic and will cause some pain with
continuous and/or frequent fine motor
activity like writing or keyboarding and with
heavy usage like gripping, carrying and
manipulating heavy weight.

(R. at 281-282, emphasis added).

Before addressing the rationale of the ALJ for discounting

the opinions of Dr. McKinney, the court will briefly address the

question of the status of Dr. McKinney.  The ALJ stated that Dr.

McKinney was a treating physician (R. at 31, 32).  Defendant, in

his brief, alleges that the ALJ erred in finding that Dr.
McKinney was a treating physician (Doc. 15 at 13-14).   A treating
source is defined at 20 C.F.R. § 404.1502.[2]   Dr. McKinney
indicates that she saw plaintiff on two occasions, on February 1,
2005, and April 4, 2006 (R. at 260, 281).   Dr. McKinney also
indicated that she is a retired physician who volunteers at the
Marian Clinic (R. at 281).   Plaintiff received treatment at the
Marian Clinic from 2002-2006 (R. at 246-259, 266-273).   Based on
these facts, the court cannot say as a matter of law that the ALJ
erred by finding that Dr. McKinney was a treating physician.

     The court will now review the rationale given by the ALJ for
discounting the opinions of Dr. McKinney.   First, the ALJ
concluded that the opinions of Dr. McKinney were "more reflective
of the claimant's subjective complaints of pain" (R. at 31-32).
In the case of <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1121 (10th

---

     [2]A treating source is a psychologist or other acceptable
medical source who provides or has provided the claimant with
medical treatment or evaluation and who has or has had an ongoing
treatment relationship with the claimant.   A treatment
relationship will be deemed ongoing when the evidence establishes
that the claimant sees or has seen the source with a frequency
consistent with accepted medical practice for the type of
treatment and/or evaluation required for the claimant's medical
condition.   A medical source who has treated or evaluated the
claimant only a few times or only after long intervals may be
deemed a treating source if the nature and frequency of the
treatment or evaluation is typical for claimant's condition.   A
medical source will not be deemed a treating source if the
relationship is not based on the need for treatment or
evaluation, but solely on claimant's need to obtain a report in
support of the claimant's claim for disability.   20 C.F.R. §
404.1502.

Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." Id. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*" McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." Id. at 1253.

More recently, in the case of Victory v. Barnhart, 121 Fed. Appx. 819 (10th Cir. Feb. 4, 2005), the court held:

> The ALJ's finding that Dr. Covington's opinion was based on claimant's own subjective report of her symptoms impermissibly rests on his speculative, unsupported assumption. See Langley, 373 F.3d at 1121 (holding that ALJ may not reject a treating physician's opinion based on speculation). We find no support in the record for the ALJ's conclusion. Nothing in Dr. Covington's report indicates that he based his opinion on claimant's subjective complaints, and the ALJ's finding ignores all of Dr. Covington's examinations, medical tests, and reports. Indeed, the ALJ's discussion of Dr. Covington omits entirely his March 22, 2001 examination and report.

> His April 3, 2001 statement might well have
> been based on his recent first-hand
> examination and observation of claimant
> during this examination, performed less than
> two weeks earlier, rather than on claimant's
> subjective complaints, as the ALJ speculated.
> See Morales v. Apfel, 225 F.3d 310, 317 (3d
> Cir.2000) (noting that the treating
> physician's opinion may "reflect expert
> judgment based on a continuing observation of
> the patient's condition over a prolonged
> period of time").

121 Fed. Appx. at 823-824.

The court finds nothing in Dr. McKinney's report that indicates that her opinions were based on plaintiff's subjective complaints. Dr. McKinney performed two physical examinations of the plaintiff, reviewed plaintiff's medical records at the Marian Clinic, and reviewed an x-ray of the lumbar spine done in April 2006 (R. at 281). Thus, as in Victory, Dr. McKinney's opinions might well have been based on a review of plaintiff's medical records, two physical examinations, and x-ray results, rather than on plaintiff's subjective complaints. Therefore, the court finds that the ALJ's conclusion that Dr. McKinney's opinions were more reflective of plaintiff's subjective complaints is not supported by the evidence in this case.

Second, the ALJ asserts that the treating records contain no record of objective studies, no complaints from the claimant of back pain, as well as no treatment for back pain (R. at 32). However, the report from Dr. McKinney from February 1, 2005 indicates that plaintiff has had treatment for a pulled muscle in

13

his back, including physical therapy, and while better, still has some pain with certain activities.  Dr. McKinney also noted that plaintiff uses pain medications and muscle relaxers (R. at 260). The report from Dr. McKinney, which was made after a review of the medical records at the Marian Clinic, clearly establishes complaints of back pain and treatment for back pain.  Thus, the ALJ's conclusion on this point is not supported by the evidence.

The ALJ also stated that there is no record of objective studies.  However, Dr. McKinney, in her April 2006 report, reviewed x-ray results of the lumbar spine.  Thus, the medical record does include an objective test result which Dr. McKinney relied on in making her findings in 2006.

Third, the ALJ discounted Dr. McKinney's opinions because they are not consistent with other medical evidence which indicates that plaintiff experiences mild degenerative disc disease (R. at 32).  However, the ALJ did not cite to any medical evidence which would support this assertion.  An ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors.  Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004).  The ALJ is not entitled to *sua sponte* render a medical judgment without some type of support for his determination.  The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment.  Bolan v. Barnhart, 212 F. Supp.2d

14

1248, 1262 (D. Kan. 2002).  In the absence of any medical evidence to support the ALJ's assertion that the opinions of Dr. McKinney are not consistent with mild degenerative disc disease, the court finds that the ALJ overstepped his bounds into the province of medicine.  See Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996); Field v. Astrue, 2007 WL 2176031 at *9 (D. Kan. June 19, 2007)(Crow, S.J.).

Furthermore, Dr. McKinney indicated in her April 2006 report the following:

> Even though the x-ray findings are mild the
> combination of mild changes has already put
> enough pressure on some of the lumbar nerve
> roots to cause some decrease in sensation and
> more importantly some decrease in strength.
> As we move our backs in ordinary activity
> like bending to the side or turning, or have
> spinal muscle spasm and splinting, the
> foramen are temporarily even smaller putting
> more than usual pressure on the spinal
> nerves, increasing pain particularly. This is
> the reason for Mr Barfield's pain and
> difficulty functioning.

(R. at 282).  Thus, Dr. McKinney explained why the mild x-ray findings are consistent with plaintiff's pain and limitations. In the absence of any medical evidence disputing these findings by Dr. McKinney, the court finds that substantial evidence does not support the ALJ's conclusion that the opinions of Dr. McKinney are not consistent with the medical evidence indicating mild degenerative disc disease.

The court finds that the statement by Dr. McKinney in April

2006, along with a medical source statement-physical, which Dr. McKinney filled out for the first time in April 2006, adds a considerable amount of additional information not contained in Dr. McKinney's statement in February 2005.  The April 2006 report is based on a review of the medical records since February 2005 and an additional physical examination.  It is also based on an x-ray of the lumber spine done in April 2006.  Dr. McKinney explained in detail why the mild x-ray findings are consistent with plaintiff's pain and difficulty functioning.  No medical evidence disputes Dr. McKinney's analysis of the x-ray results along with the other medical evidence.  The medical source statement-physical in April 2006 discusses a number of limitations not addressed in Dr. McKinney's letter of February 2005.

In the case of <u>Hardman v. Barnhart</u>, 362 F.3d 676, 678 (10th Cir. 2004), an MRI result was presented to the Appeals Council, together with a medical opinion that the MRI result was consistent with claimant's report of low back pain.  The Appeals Council considered the MRI evidence, but concluded that it did not provide a basis for changing the ALJ's decision.  The court held that the new MRI evidence is obviously crucial to an evaluation of whether objective medical evidence supports claimant's allegations of pain and limitation, and therefore it could not agree with the Appeal Council's statement that the MRI

evidence did not provide a basis for changing the ALJ's decision. Hardman, 362 F.3d at 681.

In the case before the court (Barfield), the x-ray of the lumbar spine and the discussion of the significance of the x-ray results by Dr. McKinney is clearly crucial to a determination of whether objective medical evidence supports plaintiff's allegations of pain and limitations,[3] and is equally crucial in determining the weight to be given to the opinions of Dr. McKinney. Therefore, the court does not agree with the Appeals Council statement that the x-ray and the April 2006 report of Dr. McKinney did not provide a basis for changing the ALJ's decision. Furthermore, the court has found numerous errors in the ALJ's analysis of the opinions of Dr. McKinney, as set forth above. Therefore, this case shall be remanded in order for the ALJ to properly consider the opinions of Dr. McKinney. The ALJ shall also reevaluate plaintiff's credibility and make new RFC findings in light of all the evidence, including the opinions of Dr. McKinney.[4]

---

[3]The ALJ found that plaintiff's credibility is diminished by the lack of objective medical evidence and clinical findings (R. at 32).

[4]Defendant argues in his brief that the April 2006 opinion of Dr. McKinney is internally inconsistent (Doc. 15 at 14). However, this argument was not raised by the ALJ or the Appeals Council. The Commissioner's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A decision cannot be affirmed on the basis of appellate counsel's post hoc

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on August 27, 2007.


                         s/John Thomas Reid
                         JOHN THOMAS REID
                         United States Magistrate Judge


---

rationalizations for agency action.  Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  A reviewing court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).  Because this argument was not raised by the ALJ or the Appeals Council, it will not be considered by the court.